# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Conrad L. Slocumb, | ) | Civil Action No. 9:13-1671-BHH-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| Doctor B. Wood, Doctor Tomichaco, | ) | |
| Ms. Thomas, Ms. Richberg, Mr. Goodson, | ) | |
| Ms. Earle, Mr. Robert E. Ward, | ) | |
| Mr. Bernard McKie, James S. Drake, | ) | |
| and SCDC Director Byars, | ) | |
| | ) | |
| Defendants. | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C.§ 1983.

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations

of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P., on March 11, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered

by the Court advising Plaintiff of the importance of a dispositive motion and of the need for him to

file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately,

the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response

in opposition to the Defendants' motion, with attached exhibits, on April 15, 2014, to which the

Defendants filed a reply memorandum on May 2, 2014.

1

The Defendants' motion is now before the Court for disposition.[1]

## **Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that he is a prisoner housed in the Maximum Security Unit (MSU), also known as the "Super Max", at the Kirkland Correctional Institution, part of the SCDC prison system. Plaintiff essentially complains about every aspect of the operation of the MSU and the conditions under which he is being held in a rambling and conclusory litany of purported problems and deficiencies.

Plaintiff alleges that prisoners housed in the Super Max have been deemed a Substantiated Security Risk (SSR) and are held in isolation cells for twenty-three or more hours a day. Plaintiff alleges that when they are taken out of their cells, they are "cuffed" and shackled. Plaintiff alleges that recreational opportunities are conducted within small solitary areas of the prison. Plaintiff alleges that a "decision to retain an inmate in the MSU implicates a constitutionally liberty interest which requires that all inmates be afforded due process . . . .". Plaintiff alleges that conditions in the MSU impose hardships on the prisoners involved, such as the duration of confinement, social isolation, sensory deprivation, restrictions on family visitations and phone calls, denial of outdoor exercise, and "minimized" access to educational and rehabilitation programs and privileges available to other inmates. Plaintiff alleges that he has experienced "anxiety, rage,

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

2

disassociation, and psychosis" while in the MSU, and that he has "reached his breaking point". Plaintiff also complains that inmates suffering from chronic serious mental illness are not eligible for the SCDC's Intermediate Care Services (ICS) because of disciplinary infractions that are attributable to their illness. As a result, the Defendants "fail to provide adequate mental health treatment", making it difficult for mentally ill inmates to comply with institutional rules and regulations. Plaintiff further alleges that inmates confined in the MSU do not receive long term psychiatric care.

Plaintiff also complains that the SCDC is understaffed, and that its "counseling staff" does not "meet the minimum qualification[s] for their positions". Plaintiff alleges that staff shortages result in missed medication dosages and a failure to provide adequate rehabilitation and therapeutic services, resulting in a "significant adverse effect on SCDC's ability to provide and administer both treatment plans and treatment programs designed for mentally ill patients . . . ." Plaintiff specifically complains that the "current programing at Gilliam Psychiatric Hospital and that Intermediate Care Services sites do not meet the needs of mentally ill inmates. Plaintiff complains that almost all of the mental health programs are understaffed, with approximately fifty percent of the mental health physicians in the organizational charts being vacant. Plaintiff alleges that the psychiatric and psychiatric nursing services are [also] in disarray" due to the staff shortages, resulting in "critical situations with extremes of poor care [and] inhumane treatment . . ."

Plaintiff also complains that correctional officers are underpaid, undertrained, and understaffed, and that as a "result of their lack of proper training, CO's often misinterpret the behavior of mentally ill inmates as malingering or as willful misconduct . . .", resulting in unnecessary and inappropriate punishment. Because of this, Plaintiff alleges that tear gas and pepper spray are disproportionately used on mentally ill inmates, and with mentally ill inmates being

3

punished for displaying symptoms of their disorders.

Plaintiff complains that "cruel disciplinary sanctions often delay the MSU release eligibility dates of mentally ill inmates, causing them to spend proportionally more time in MSU than inmates who do not suffer from mental illness". Plaintiff further complains that the "sanitation and hygiene in some lock-up units are deplorable," and that "at times the stench of urine and feces is pervasive". Plaintiff alleges that inmates in lock-up units who exhibit suicidal or self-destructive behaviors are not always given immediate clinical attention, but instead may be treated as disciplinary problems, while inmates in "crisis intervention" are placed in non-clinical lock-up units with a suicide blanket or even nothing, sometimes for a week or longer. Plaintiff also complains about the acoustics in the Super Max, and that it is sometimes difficult to hear and communicate in any therapeutically effective manner. Plaintiff complains that he was "erroneously and unjustifiably" admitted into the MSU in 1998, 2005, and again in 2012 because of his mental illness, which is not a reason for placement in the MSU. Plaintiff further complains that he was not afforded an adjudication hearing nor notice of a hearing proceeding date before the SCDC arrived at the decision to place him in the SMU, in violation of SCDC policy and state regulations.

Plaintiff seeks declaratory and/or injunctive relief, including his immediate release from the Maximum Security Unit and an improvement in the SCDC's "mental health system", as well as monetary damages. See generally, Plaintiff's Verified Complaint.

In support of summary judgment in this case, the Defendants have submitted an affidavit from Stephanie Willis, Custodian of Records within the Inmate Records Office of the SCDC. Willis has attached to her affidavit copies of various inmate records relating to the Plaintiff, including his offender printout; copies of state court records from Plaintiff's conviction for criminal



4

sexual conduct in the first degree, robbery, and escape; documents detailing Plaintiff's numerous disciplinary convictions since he has been in the SCDC, including convictions for assaultive conduct (including numerous convictions for striking an employee), possession of a weapon, sexual misconduct, possession of contraband, refusing to obey orders, mutilation, inciting/creating a disturbance, and other infractions. A separate printout shows repeated transports of the Plaintiff for medical and psychiatric evaluations and/or treatments. See generally Willis Affidavit, with attached Exhibits.

The Defendant Beverly Wood had submitted an affidavit wherein she attests that she is the Chief of Psychiatry and Director of Centralized Mental Health Services for the SCDC, and that in this position exercised the discretion necessary to carry out her duties as a mental health physician and as Chief of Psychiatry for the SCDC. Wood attests that, based on her personal knowledge as well as her review of Plaintiff's medical records, Plaintiff has been seen by the mental health medical staff at the SCDC on a regular basis since the time of his initial incarceration, and that there is no evidence in any of these records that Plaintiff has suffered from any life threatening mental health illness or condition during his period of incarceration with the SCDC, or that there has existed a substantial risk of serious harm to the Plaintiff's mental health or well being during this period. Wood attests that the mental health professionals at the SCDC have provided appropriate and timely treatment for the Plaintiff, and that at no time has either she or any other mental health professional threatened Plaintiff or used any type of punishing devices or other improper mental health treatment mechanism in treating the Plaintiff.

Wood attests that the treatment of an individual's mental health needs necessarily involves the exercise of professional judgement and discretion in weighing competing considerations



5

in light of appropriate professional standards, and that the mental health assessment, care and treatment provided to the Plaintiff by the mental health staff of the SCDC during the relevant time period has been appropriate in light of his mental health needs. Wood attests that all decisions made by the mental health staff of the SCDC with respect to Plaintiff's assessment, care and treatment were made through the exercise of professional judgment and discretion in weighing competing considerations in light of appropriate professional standards, and that at no time was she deliberately indifferent to any substantial risk of serious harm to the Plaintiff or deliberately indifferent to any serious medical need of the Plaintiff, nor is she aware of any other mental health staff of the SCDC being deliberately indifferent to Plaintiff serious medical and health needs. See generally, Wood Affidavit.

The Defendant Cynthia Thomas has submitted an affidavit wherein she attests that she is a Clinical Correctional Counselor with the Gilliam Psychiatric Hospital (GPH), which is the provider of all psychiatric and/or mental in-patient services for the SCDC. Although named as a Defendant in this lawsuit, Thomas attests that she has never personally met the Plaintiff, has never seen the Plaintiff, and has never provided any counseling or treatment to the Plaintiff. See generally, Thomas Affidavit.

Finally, the Defendant Bernard McKie has submitted an affidavit wherein he attests that he is the Warden of the Kirkland Correctional Institution, where Plaintiff is housed, and that he is familiar with and knows the Plaintiff. McKie attests that, as Warden, he oversees the general operation of KCI, including KCI's Maximum Security Unit, but that he is not directly responsible for supervising any inmates housed at KCI.

McKie attests that in 2005 Plaintiff's housing classification was for the MSU. McKie



6

attests that in March 2005, the SCDC Maximum Security Review Committee met to evaluate the Plaintiff and conditionally recommended that he be reviewed by a mental health treatment team at the Broad River Correctional Institution (BCI) for admission into a mental health treatment program in the Behavior Management Unit (Cutter Unit). Plaintiff's housing classification remained Kirkland MSU, but as a result of this recommendation, he conditionally was housed at BCI in the Cutter Unit. However, McKie attests that due to Plaintiff's conduct during this time, he was found to not be an appropriate candidate for this program, and in October 2005 he was returned to the Kirkland MSU.

McKie attests that at no time did he violate any of Plaintiff's constitutional rights, that at all time he has followed all SCDC policies and procedures as well as all state and federal laws and regulations with regard to any actions he took involving the Plaintiff, and that he has also not at any time been deliberately indifferent to a substantial risk of serious harm to the Plaintiff. McKie also attests that he does not have any responsibilities involving the direct provision of medical care or treatment to inmates, and has not had any involvement in the direct provision of daily supervision, medical care, or treatment of the Plaintiff. McKie attests that he is not aware that any medical staff, including the mental health staff, has been deliberately indifferent to any substantial risk of serious harm to the Plaintiff or to any of his serious medical needs, and is not aware of any violation of Plaintiff's constitutional rights by employee or agent of the SCDC. See generally, McKie Affidavit.

As an attachment to his memorandum in opposition to the Defendants' motion for summary judgment, Plaintiff has submitted a copy of an order entered in the South Carolina Court of Common Pleas, Fifth Judicial Circuit, on January 8, 2014, involving a class action brought on behalf of approximately 3,500 state inmates who met the definition of being seriously mentally ill. That order (which was entered after the filing of this lawsuit) found problems with the mental health



program at the SCDC and ordered the submission or a remedial plan by the SCDC consistent with the findings in that order.

Plaintiff has also submitted an "affidavit" wherein he "attests" that he suffers from a "severe" mental illness, and that the Defendants have failed to provide a systematic program for screening and evaluating inmates in order to identify those who require mental health treatment upon arrival at SCDC or continued confinement at MSU. Plaintiff further states in his affidavit that the mental health providers in the MSU are understaffed to the point that they can not identify and treat in an individual manner those inmates suffering from mental disorders, that they administer psychotropic medication prescribed by Dr. Wood without appropriate supervision or periodic evaluations, and that the Defendants have been "deliberate[ly] indifferent to the deficiencies in the mental health system. See generally, Plaintiff's Affidavit.

Finally, Plaintiff has submitted copies of a Step 1 Grievance from November 9, 2012 complaining about a classification decision and a Request to Staff Member form dated January 20, 2014, wherein Plaintiff is complaining about blood and feces smeared on his walls. See generally, Plaintiff's Exhibits.

## Discussion

As noted, the Defendants have moved for summary judgment on Plaintiff's claims. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

8

Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

Initially, it is necessary to address the Defendants' arguments in their brief that this case should be dismissed either for failure of the Plaintiff to exhaust his administrative remedies, or pursuant to the "three strikes" provision of 28 U.S.C. § 1915(g).

With respect to exhaustion, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." However, while Defendants correctly point out that, before Plaintiff may proceed with his claims in this Court he must first have exhausted the SCDC's administrative remedies,[3] it is the Defendants who have the burden of showing that Plaintiff failed

---

[3]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure in 2013 (the Court notes that the procedure had some changes made after the relevant time here); all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if a grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v.
(continued...)

9



to exhaust his administrative remedies.  See  Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; see also Jones v. Bock, 127 S.Ct. 910 (2007).  Defendants have submitted no evidence to meet this burden; rather, they simply state in their memorandum in support of summary judgment that Plaintiff has failed to exhaust his readily available administrative remedies in this case.  See Defendants' Brief, p. 16.  Defendants have provided no affidavit from an appropriate prison official attesting to Plaintiff's grievance history or that he has not administratively exhausted the claims in this lawsuit, have submitted no grievance documents, or otherwise submitted any evidence to meet their burden of showing a failure to exhaust. Therefore, the Defendants are not entitled to dismissal of this case on the ground that Plaintiff failed to exhaust his prison administrative remedies prior to filing this lawsuit.

With respect to the "three strikes" rule, § 1915(g) of the Prison Litigation Reform Act (PLRA) provides that if a prisoner has already, on three or more occasions, brought an action in the courts of the United States that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim, then he may not bring another civil action in forma pauperis[4] unless he is under imminent danger of serious physical injury.  Plaintiff has had three prior cases that have been deemed strikes for purposes of § 1915(g).[5]  However, since Plaintiff was "struck out" under § 1915(g) back

---

[3](...continued)
Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006).

[4]Plaintiff is proceeding IFP in this case.  See Court Docket No. 14.

[5]Slocumb v. Moore, et al., Civil Action No. 0:97-1350; Slocumb v. Moore, et al., Civil Action No. 0:97-1558; and Slocumb v. Johnson, et al., Civil Action No. 0:98-498.  See Aloe Creme
(continued...)

in the late 1990's, the Fourth Circuit has held that a dismissal without prejudice for failure to state a claim does not count as a strike for purposes of the "three strikes rule". See McLean v. United States, 566 F.3d 391, 397 (4th Cir. 2009). See also Williams v. Simmons, 471 F.Appx. 205 (4th Cir. 2012); McFadden v. McKie, 464 F.Appx. 155, at * * 1 (4th Cir. 2012) [Dismissal for failure to state a claim must be with prejudice to count as a strike under the PLRA]. Pursuant to this revised standard, Plaintiff may argue that the dismissal of Slocumb v. Johnson, et al., Civil Action No. 0:98-498, would not count as a "strike" after McLean because that case did not specifically say that the dismissal for failure to state a claim in that case was with prejudice.

While the undersigned does not except such a construction; see McLean, 566 F.3d at 396 ["Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be a judgment on the merits and to be rendered with prejudice."]; Gormley v. Nix, No. 04-12374, 2005 WL 2090282 at * 4 (11th Cir. Aug. 31, 2005)[finding order of dismissal which did not state whether dismissal was with or without prejudice is treated as one with prejudice]; Davis v. Samuel I White, P.C., No. 13-780, 2014 WL 1604270 at * 9 (E.D.Va. Apr. 21, 2014)[A dismissal under Rule 12(b)(6) that does not state whether it is with or without prejudice operates as a dismissal with prejudice]; see also Fed.R.Civ.P. 41(b); out of an abundance of caution, and in order to provide for a more comprehensive review of the merits of Plaintiff's claims in this instance, the undersigned is not recommending dismissal of this case based on §1915(g) and has proceeded to address Plaintiff's claims hereinbelow, to the extent appropriate, on the merits.

---

[5](...continued)
Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].

11

## II.

Plaintiff's allegations appear to primarily set forth a claim that Plaintiff is not receiving adequate medical care and treatment for an alleged "mental illness". However, in order to survive summary judgment and proceed with a claim for denial of adequate medical care, Plaintiff cannot simply allege in a general and conclusory manner that he is not receiving adequate medical care for a serious condition. Rather, he must present *evidence* sufficient to create a genuine issue of fact that a named Defendant has been deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to present any competent evidence to support such a claim and, as such, there is no evidence before the Court sufficient to create an issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs.

First, Plaintiff has not even identified any particular Defendant as having provided him with improper medical care, or for being responsible for his having received improper medical care, other than possibly Dr. Wood. With respect to the non-medical personnel cited in the caption of Plaintiff's Complaint, those officials would be entitled to rely on the decisions made by medical professionals regarding any medical care Plaintiff is receiving. Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]; see also Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11,

12

1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. at 837. Even with respect to the other medical personnel named in the Complaint, other than Dr. Wood, Plaintiff has failed to make any specific factual allegation of any improper or deliberately indifferent decisions, care or treatment provided to the Plaintiff by any other medical personnel. Plaintiff does not identify any particular Defendant in discussing his various complaints in the allegations of his verified Complaint, while in his "affidavit" attached to his memorandum in opposition to the Defendants' motion, the only defendant Plaintiff discusses is the Defendant Dr. Wood, who he alleges (without providing any medical evidence to support his allegation) has prescribed him various behavior altering and psychotropic medications "in dangerous amounts".

In order to state a damages claim against any of these Defendants in their individual capacities, Plaintiff must set forth factual allegations sufficient to establish a question of fact as to whether any of these Defendants engaged in conduct that violated Plaintiff's constitutional rights. Gomez v. Toledo, 446 U.S. 635, 640 (1980); see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1999)["Liability . . . must be based on the personal involvement of the Defendant"], cert denied, 522 U.S. 1154 (1999); Wilson v. Cooper, 922 F.Supp. 1286, 1293 (N.D.Il. 1996); see also Horton v. Marovich, 925 F.Supp. 540 (N.D.Il. 1996)["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"]. Other than with respect to Dr. Wood, Plaintiff has made no such factual allegations. Therefore, these individuals are all entitled to dismissal as party Defendants from Plaintiff's medical care claim.

13

Even with respect to Dr. Wood, Plaintiff has provided no evidence to support the claim in his affidavit that this Defendant has prescribed him "dangerous amounts" of various behavior altering and psychotropic medications. Without any supporting evidence to support this general and conclusory statement, this claim is subject to dismissal. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. Otherwise, Plaintiff has only set forth general and conclusory assertions and claims concerning the overall quality of care being provided to SMU inmates at KCI and how that quality of care purportedly affects inmates in the MSU and the conditions under which they are held, rarely even mentioning the care and treatment he has himself specifically received and the effects, if any, that treatment has had on *him*. This case is not a class action, and Plaintiff cannot generally assert claims on behalf of other inmates in the MSU. See Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)[a prisoner cannot act as a "knight-errant" for other]; Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)[a pro se prisoner unassisted by counsel cannot be an advocate for others in a class action]; Inmates v. Owens, 561 F.2d 560, 562-563 (4th Cir. 1977)[one pro se inmate does not have standing to sue on behalf of another inmate]. See also Myers v. Loudon Co. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005)[finding that a pro se person's right to litigate for oneself does not create a similar right to



14

litigate on behalf of others].[6]

With respect to the care that has specifically been provided to the Plaintiff, Dr. Wood has submitted an affidavit wherein she attests that a review of Plaintiff's records as well as her own personal knowledge of the Plaintiff shows that Plaintiff has been seen by the mental health medical staff on a regular basis since the time of his initial incarceration, that mental health professionals at the SCDC have provided appropriate and timely treatment to the Plaintiff, and that she cannot identify any evidence in Plaintiff's records that he has suffered from any life threatening mental health illness or condition during his period of incarceration within the SCDC, or that there has existed a substantial risk of serious harm to the Plaintiff's mental health or well being during this period. See Wood Affidavit. The Defendants have also provided copies of SCDC Record Summary printouts dating back to 1993 showing that through August 2013 Plaintiff has been transported on at least 95 occasions to the prison infirmary, the Just Care facility, Palmetto Richland Hospital, the Gilliam Psychiatric Hospital, Tuomey Regional Hospital, and other facilities for medical care and treatment. See, Defendants' Exhibit [Transport Record].

--------

[6]In any event, as one of his exhibits Plaintiff has himself provided a copy of an order from a state court lawsuit granting judgment in favor of a class of prison inmates relating to the overall quality of care and conditions of confinement of state prisoners with mental disabilities. Notably, that order was entered after the submission of substantial evidence to support the claims asserted before that Court, in contrast to the case at bar. In any event, as Plaintiff is apparently contending though his filings in this case that he suffers from a severe mental illness, he would be among the state prisoners covered by the order entered in that case. Therefore, although Plaintiff cannot assert claims on behalf of other prisoners in this lawsuit, it appears many of the general goals and results sought by the Plaintiff in this lawsuit have already been achieved through the entry of the state court order granting judgment in favor of the Plaintiffs in that state lawsuit. See Ct. R., P.R., K.W., on behalf of themselves and others similarly situated, et al. v. South Carolina Department of Corrections, et al., Civil Action No. 2005-CP-40-2025 (S.C. Court Common Pleas, 5th Judicial Circuit).

15

While Plaintiff may not agree with the extent and nature of the medical care he is receiving, he cannot simply allege that he has not received constitutionally adequate medical care or attention, otherwise provide no supporting evidence other than his own subjective opinion, and expect to survive summary judgment, particularly when the Defendants have submitted medical printouts as well as sworn testimony from a medical professional to refute his claims.  Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances].  Therefore, Plaintiff's medical claims should be dismissed.

### III.

Liberally construed, Plaintiff's Complaint can also be read as a complaint about Plaintiff's classification as an MSU inmate.  Plaintiff asserts he has a constitutionally protected "liberty interest which requires that all inmates be afforded due process" before they can be placed in the MSU, and that he was "erroneously and unjustifiably" admitted to the MSU in 1998, 2005, and again in 2012 without an adjudication hearing or notice of a hearing, all in violation of SCDC policy and state regulations.  This claim is deficient on several levels.

First, with respect to any classification decisions made in 1998 or 2005, any claims

16

Plaintiff may have relating to those decisions are barred by the applicable three year statute of limitations. See Bradley v Cantley, No. 94-7064, 1995 WL 420976 at * 1 (4th Cir. July 18, 1995); Williams v. Holman, No. 11-274, 2013 WL 3050654 at * 3 (D.S.C. June 14, 2013). With respect to the classification decision from 2012, while Plaintiff complains that he was "returned to MSU" on October 10, 2012 without being afforded a classification review hearing or 48 hours notice of a hearing date, Plaintiff's own exhibit (Step 1 Grievance form) indicates that Plaintiff had a classification review conducted on July 11, 2012. That Step 1 Grievance form also clearly indicates (as do the classification documents attached as an exhibit to the affidavit of Stephanie Willis) that Plaintiff's placement in the MSU in October 2012 was because he had been returned to that facility from the Gilliam Psychiatric Hospital, where he had been sent for medical treatment. Plaintiff's classification had never changed, and there is no evidence that Plaintiff was supposed to have had (or was entitled to) any type of hearing when he was returned to prison following treatment at the psychiatric hospital. While Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not entitled to a due process hearing every time his is transported from one facility to another or action is taken to control his behavior. See generally, Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Sandin v. Connor, 515 U.S. 472, 478 (1995)[The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"]; Owens v. Padula, No. 06-3014, 2007 WL 2116440 at * 7 (D.S.C. July 19, 2007). Plaintiff has presented no evidence to dispute the extensive disciplinary conviction record as shown by the Defendants' exhibit attached to their motion for summary judgment, and his placement in the MSU under the facts presented does not by itself give



17

rise to a constitutional claim. Sandin, 515 U.S. at 483-485 [rejecting inmate's claim that placement in disciplinary segregation violated his due process or liberty interests under either the Constitution or state statutes]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmate's confinement in Administrative Segregation did not impose such an atypical hardship so as to implicate a liberty interest].

Hence, Plaintiff has not set forth a viable constitutional claim just because he is in the MSU, as he has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Sandin, 515 U.S. at 486 [holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]. Rather, in order to survive summary judgment, Plaintiff must have presented some evidence that the *reason* he is in the MSU is because the deciding officials placed him there for improper reasons, such as retaliation for engaging in otherwise lawful conduct (such as filing lawsuits), racial discrimination, or some other arbitrary and capricious reason. See generally,

18

Chevron U.S.A. v. Natural Res. Def. Cil., Inc., 467 U.S. 837, 844 (1984) [Agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute]; Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion].

Plaintiff has presented no such evidence.  He simply complains that his disciplinary infractions (to the extent Plaintiff is even talking about himself in his Complaint, as opposed to just the general policies and procedures in the MSU, with which he disagrees) should not be counted against him for purposes of classification decisions because he is "mentally ill".  This argument is of course intertwined with his other claim about the quality of medical care he is receiving, already discussed herein supra.  However, the prison records provided to this Court show that Plaintiff is a dangerous inmate prone to committing frequent disciplinary infractions, including physical assaults, and Plaintiff has presented no evidence to give rise to a genuine issue of fact that his placement in the MSU is the result of an arbitrary or capricious decision by prison officials.  See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security'"] (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)); Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"];

19

<u>Sandin</u>, 515 U.S. at 483-485 [rejecting inmate's claim that placement in disciplinary segregation violated his due process or liberty interests under either the Constitution or state statutes]; <u>Chevron U.S.A.</u>, 467 U.S. at 844 [Agency's decisions are not to be second-guessed by federal courts unless they are shown to be arbitrary, capricious, or manifestly contrary to the statute].

Under these facts, even assuming for purposes of summary judgment that Plaintiff is correct that prison officials failed to follow prison procedures in determining Plaintiff's placement (of which there is no evidence), that would not in and of itself be a compensable claim in this § 1983 action. <u>Keeler v. Pea</u>, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); <u>see also Scott v. Hamidullah</u>, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)); <u>Johnson v. S.C. Dep't of Corrections</u>, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing <u>Riccio</u>, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).

This claim is therefore without merit.

## IV.

The remainder of Plaintiff's allegations in his Complaint can best be described as a general conditions of confinement claim. However, these assertions are essentially a hodge podge of varying and conclusory complaints and allegations Plaintiff has about the MSU, none of which are



supported by *evidence* sufficient to create an issue of fact as to whether a constitutional violation has occurred. During the time period at issue, Plaintiff was a prisoner being held in the Maximum Security Unit of a state prison, not a hotel. It is to be expected that conditions of confinement under such circumstances are often times less than ideal. Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988). Therefore, the only issue for this Court to decide is whether Plaintiff has presented evidence sufficient to create a question of fact that the conditions under which he was confined during the relevant time period violated his constitutional right to be free from conditions so deplorable that they could be deemed cruel and unusual punishment. As with Plaintiff's other claims, he has failed to present any such evidence.

In his Complaint, Plaintiff generally complains that conditions in the MSU impose unconstitutional "hardships" on prisoners because of the social isolation, sensory deprivation, restrictions on family visitations and phone calls, denial of outdoor exercise, and "minimized" access to educational and rehabilitation programs and privileges available to other inmates.[7] These conclusory allegations are not themselves "evidence" of a constitutional violation. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would

---

[7]As previously noted and discussed, Plaintiff also complains extensively about the medical care (or alleged lack thereof) received by inmates in the MSU, which has already been discussed, supra.

entitle the plaintiff to relief"].  Getting a little more specific, Plaintiff also complains that the "sanitation and hygiene in some lock-up units are deplorable", that "at times the stench of urine and feces is pervasive", and that "crisis intervention" inmates are often times placed in a cell with nothing more than a suicide blanket.  Plaintiff also complains about only being allowed out of his cell for maybe one hour a day for exercise, about being required to wear shackles when outside of his cell, and about the conditions prisoners are subjected to when being held in a "strip cell" (although Plaintiff does not actually say he has ever been in a strip cell, or if so, for how long or under what conditions).

Admittedly, being held in a maximum security prison facility is no doubt unpleasant. However, given Plaintiff's voluminous and extensive disciplinary history, the undersigned cannot find any evidence of arbitrary and capricious decision making with respect to Plaintiff's custody status, and he has simply failed to present any evidence with respect to any of these claims to show that the conditions under which he is being housed violate the constitution.  See generally Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Farmer, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"].  Plaintiff has presented no evidence to show that he is not being allowed to exercise, concedes in his filings that he is provided with some limited periods of outside exercise, and has not even argued that he cannot exercise in his cell if he wants to. Chavis v. Fairman, No. 94-1503, 1995

22

WL 156599 at * * 5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have ample opportunity to enjoy indoor activity."]. Given Plaintiff's extensive disciplinary history, it is also not surprising that he is required to be in restraints when outside of his cell. Ruffino v. Lawrence, No. 08-1521, 2010 WL 908993 at * 5 (D.Conn. Mar. 9, 2010)[citing numerous cases upholding inmates being required to wear restraints during exercise and finding no contrary decisions].

Placement in strip cells is also sometimes necessary in such facilities, as are limitations on visitation, mail and other such privileges. See generally, Estrada v. Kruse, 38 Fed. Appx. 498-499 (10th Cir. 2002)[No Eighth Amendment violation where Plaintiff was placed in stripped basement cell for 5 days where he suffered no injury and he did not show Defendants had evil motives or intent]; Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694 (7th Cir. 1998) [strip searches constitutional absent evidence they were performed for purposes of harassment or punishment]; cf. Dixon v. Toole, No. 04-183, 2006 WL 1038433 at * 5 (S.D.Ga. Apr. 13, 2006)[Holding that placement in a stripped suicide cell for two days did not violate "the minimal civilized measure of life's necessities."], aff'd, 225 Fed.Appx. 797 (11th Cir. Apr. 4, 2007); Goins v. Weilenman, No. 08-150, 2009 WL 211136 at * 3 (S.D.Ga. Jan. 28, 2009)[Noting that given inmate's past history of cutting his wrists, the inmates's placement in a strip cell was to protect him from harm]; Michenfelder v. Sumner, 860 F.2d 328, 332-333 (9th Cir. 1988) [strip searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next]; Lock v. Clark, No. 90-327, 1992 WL 559660 at * 9 (N.D.Ind. Mar. 17, 1992)["The deprivations alleged by [Plaintiff] in this case [which consisted of being confined for seven days in

23

a 'strip cell' in a segregation unit, deprived of all personal property, including soap and hygienic items] fail to satisfy the objective component of his Eighth Amendment conditions claim, and they do not rise to a constitutional violation."]; <u>Ramirez v. McCaughtry</u>, No. 04-335, 2005 WL 2010173 (W.D.Wisc. 2005) [upholding policy that restricted access to newspapers, magazines, and photographs to inmates in segregation as part of an incentive system for good behavior]; <u>Savko v. Rollins</u>, 749 F.Supp. 1403, 1409 (D.Md. 1990) [Limitation on the amount of in-cell religious reading material contained in prison regulation is constitutional under <u>Turner</u>[8] standards]; <u>Cosco v. Uphoff</u>, 195 F.3d 1221, 1224 n.3 (10th Cir. 1999) [Noting that an inmate has no property interest in a prison job]; <u>Couch v. Jabe</u>, No. 11-34, 2012 WL 3043105 at * 7 (W.D.Va. July 25, 2012)["Prison officials undoubtedly have the right to screen mail entering a correctional facility to prevent the introduction of items that undermine security, good order, discipline, or rehabilitation."]; <u>Corey v. Reich</u>, No. 02-2801, 2004 WL 3090234 (D.S.C. March 9, 2004) [Upholding SCDC policy restricting prisoners' ability to receive magazines, books, mail, or other materials in the MSU, and finding that this policy did not violate the prisoners' constitutional rights], <u>aff'd by</u> 2004 WL 1730327 (4th Cir. Aug. 3, 2004).

Similarly, without some actual evidence showing that the conditions under which Plaintiff is specifically being held are so deplorable as to be deemed cruel and unusual punishment, Plaintiff's case cannot proceed past summary judgment simply by him complaining in his pleadings that conditions are bad. <u>See also</u> Plaintiff's Exhibit [Request to Staff form dated 1/20/14]; <u>cf.</u>

---

[8]<u>Turner v. Safley</u>, 482 U.S. 78, 89-90 (1987) [discussing four-factor test to be utilized when assessing reasonableness of regulation which impinges on a First Amendment right].



Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1977)[accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."]; Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."]. Rather, Plaintiff needs to have submitted some evidence to support his claims, such as supporting affidavits, reports or findings from Health Department inspections, maintenance records showing poor cell maintenance or conditions, or evidence of harm he has suffered as a result of some specific deficiency. He has presented no such evidence. Baber, 977 F.2d at 874-75 [To survive a motion for summary judgment, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial]; Johnson v, 718 F.Supp. at 38 ["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; Holley v. Johnson, No. 08-629, 2010 WL 2640328 at * * 9-15 (W.D.Va. June 30, 2010)[noting that while excessive force claim does not require showing of a significant injury, condition of confinement claim does]; see generally, Rish, 131 F.3d at 1096 ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"].

By reaching the conclusion that no compensable constitutional violation has been shown in the evidence, the undersigned does not intend to signal a lack of concern over Plaintiff's

25

complaints. He has simply failed to submit any evidence to support his general and conclusory claims of unconstitutional conditions of confinement. See generally, Slezak, 21 F.3d at 590 [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; cf. Shakka, 71 F.3d at 166 ["In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eight Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions', or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions"]; Davidson v. Coughlin, 968 F.Supp. 121, 129-130 (S.D.N.Y. 1997)[Discussing standard for evaluating whether exercise deprivation fell below objective standard of Eighth Amendment]. Hence, while Plaintiff may have some state law claim or administrative process he could pursue, absent some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case, the undersigned does not find that Plaintiff has presented a genuine issue of fact as to whether his constitutional rights have been violated during his period of incarceration in the MSU sufficient to survive summary judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].



26

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

September 29, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

